AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the

Southern District of California



FILED

OCT 3 0 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Metro PCS<br>2250 Lakeside Boulevard, Richardson, Texas 75082 | )<br>)<br>)<br>)<br>)<br>) |

Case No.  **18 MJ 5619**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Attachment A, incorporated fully herein. This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A).

located in the          Southern          District of          California          , there is now concealed *(identify the person or describe the property to be seized)*:
Attachment B, incorporated fully herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21 USC 841(a)(1), 846 | Possession with intent to distribute controlled substances and conspiracy. |

The application is based on these facts:

See attached affidavit, incorporated fully herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Michael P. McCready, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  10/30/18

_____
*Judge's signature*

City and state:  San Diego, CA

Karen S. Crawford, United States Magistrate Judge
*Printed name and title*

1

### AFFIDAVIT

2     I, Michael P. McCready, being duly sworn, state:

3

### PURPOSE

4     1.    I make this affidavit in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) for information associated with a cellular telephone assigned call number **760-877-3970**, and International Mobile Subscriber Identity 310260969219355 ("**Target Telephone**"), believed to have been used by Ricardo Vasquez ("Vasquez"), that is stored at premises controlled by Metro PCS, a wireless telephone service provider, as further described in Attachment A, incorporated herein. The requested warrant requires Metro PCS to disclose to the United States copies of the information described in Section I of Attachment B, incorporated herein. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B, incorporated herein. Such information is as follows:

14     a.    historical cell site and cell sector activations, and Internet Protocol ("IP") address and source port log-in records, as well as all telephone connection records (including connection records of all completed or attempted voice, data, and text message/SMS/MMS communications) for the **Target Telephone** from <u>August 18, 2018, through and including August 21, 2018</u>.

19     2.    Based on the information below, there is probable cause to believe that the requested historical cell site information of the **Target Telephone** will lead to: (1) evidence of a crime; (2) contraband, fruits of a crime, or other items illegally possessed; and (3) property designed for use, intended for use, or used in committing a crime, namely: possession with the intent to distribute controlled substances, and conspiracy to do the same, in violation of 21 U.S.C. §§ 841 and 846.

25

### BACKGROUND AND EXPERIENCE

26     3.    I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated

in Titles 18 and 21 of the United States Code.

4.      I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed since September 2006. I am currently assigned to the North County Regional Gang Task Force ("NCRGTF") at the FBI North County Resident Agency in Carlsbad, California. I received formal training at the eighteen (18) week FBI Basic Agent Training in Quantico, VA. The 18-week Basic Academy included comprehensive, formalized instruction in basic narcotic investigations, drug identification and detection, interdiction, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, undercover operations, and counterintelligence and counterterrorism threats. From January 2007 until December 2016, I was assigned to a Violent Crime and Major Offenders squad at the FBI San Jose Resident Agency in Campbell, California. Additionally, from May 2013 until December 2016, I was assigned as a Task Force Agent with the Drug Enforcement Administration ("DEA") at the DEA Resident Office in San Jose, California.

5.      During the course of my law enforcement career, I have been involved in investigations of numerous criminal and counterterrorism offenses, including those offenses related to this current investigation. Conservatively, I have participated in numerous investigations of illicit drug trafficking organizations, ranging from street-level dealers to major distributors. These investigations have included the use of confidential sources ("CS"); undercover agents; the analysis of pen register, trap and trace, and toll records; physical surveillance; Title-III wire intercepts; and the execution of arrest and search warrants. These investigations have also included the unlawful importation, possession with intent to distribute, and the distribution of controlled substances, the related laundering of monetary instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses.  These investigations have resulted in state and federal prosecutions of individuals who have possessed, imported, or distributed controlled

Case 3:18-mj-05619-KSC   Document 1   Filed 10/30/18   PageID.4   Page 4 of 13

1  substances, including cocaine, heroin, methamphetamine, marijuana, and 3,4-
2  Methylenedioxymethamphetamine (also known as MDMA, or Ecstasy), as well as the
3  seizure of those illegal drugs and the proceeds from the sale of those illegal drugs.

4      6.     Through the course of my training, investigations, and conversations with
5  other law enforcement personnel, I am familiar with the methods utilized in narcotics
6  trafficking operations, and the trafficking patterns employed by narcotics organizations.
7  For example, I know that narcotics traffickers often use one or more telephone facilities to
8  negotiate times, places, schemes, and manner for importing, possessing, concealing,
9  manufacturing, and distributing controlled substances, and for arranging the disposition
10 of proceeds from the sale of controlled substances. Multiple or successive telephone
11 facilities are often used in an effort to keep their identities secret or to otherwise frustrate
12 the investigative efforts of law enforcement. Telephone facilities are also commonly carried
13 on the trafficker's person while they coordinate narcotics transactions.

14     7.     Additionally, I am aware that Metro PCS is a telephone service provider
15 ("service provider") that can provide GPS, precision location and/or cell site data for cellular
16 telephones for which the service provider provides service.  I am also aware that GPS,
17 precision location and/or cell site data may assist investigators by obtaining an
18 approximate location of the telephone. I am aware that Metro PCS is headquartered at
19 2250 Lakeside Boulevard, Richardson, Texas 75082.

20     8.     This affidavit is based on my own investigation, the review of evidence
21 obtained during the course of this investigation, and information disclosed to me by other
22 law enforcement officers and agents.  Since this affidavit is for a limited purpose, I have not
23 included every fact I know about this investigation.  I set forth only facts necessary to
24 establish foundation for the requested warrant.  Dates, times, and amounts referenced
25 herein are approximate.

26                              **PROBABLE CAUSE**

27     9.     On August 21, 2018, at approximately 1:35 p.m., a San Diego Sheriff's
28 Department ("SDSO") Deputy was driving near North Emerald Drive and Chasin Street in

3

Vista, California, when he observed a maroon Nissan Altima bearing California license plate 7ZRX461 ("the Nissan") driving in front of him. As the Nissan turned westbound on Chasin Street, the Deputy noticed the front windows of the Nissan were tinted in violation of California Vehicle Code 26708(a)(1). As the Deputy continued driving behind the Nissan, he observed the Nissan turn southbound on Harriet Street and then make a U-turn in the middle of an intersection, which impacted the regular flow of traffic, in violation of California Vehicle Code 21801(a).

10. The SDSO Deputy proceeded to conduct a traffic stop of the Nissan near the intersection of Chasin Street and Harriet Street in Oceanside. Once the Nissan pulled over to the side of the road, the Deputy contacted the driver, identified as Vasquez, and passenger, identified as Abigail Soto Ramirez ("Soto Ramirez"). Records checks revealed Vasquez's driver's license was suspended/revoked. The Deputy instructed Vasquez to exit the vehicle; as Vasquez began exiting the vehicle, a clear glass bulbous object fell from Vasquez's lap and onto the driver's seat. Based on his training and experience, the Deputy recognized the object, which had a crystalline substance inside, to be a methamphetamine pipe. A subsequent test of the net weight of the crystalline substance inside the pipe resulted in a net weight of approximately 0.05 grams.

11. Thereafter, a California Highway Patrol ("CHP") Officer and his narcotics detection canine, "Blade," arrived on scene and conducted an exterior narcotics "sniff" of the Nissan. The CHP Officer observed that Blade provided a positive alert to the rear passenger door of the Nissan. Once the CHP Officer opened the rear passenger door, Blade alerted to a black laptop briefcase on the right rear floorboard. The CHP Officer then opened the front passenger side door, and Blade alerted to a black purse on the front passenger seat.

12. The SDSO Deputy then proceeded to search the Nissan. The Deputy located several shaved vehicle keys inside the center console on top of the vehicle registration paperwork. The vehicle registration paperwork bore Soto Ramirez's name. The Deputy also located the black laptop briefcase behind where Soto Ramirez was sitting. The briefcase contained paperwork with Soto Ramirez's name on it. It also contained a white Valley View

4

Casino bag that contained two clear plastic heat-sealed bags, which contained a white crystalline substance. The net weight of the crystalline substance was approximately 375.15 grams. A search of the black purse on the front passenger seat revealed a Mexican passport with Soto Ramirez's name and information. It also revealed a clear plastic baggie with approximately 2.71 grams of a white crystalline substance. Soto Ramirez and Vasquez were arrested for state violations of possession of a controlled substance, possession of a controlled substance for sale, and possession of burglary tools. Vasquez was also arrested for possession of drug paraphernalia. Both Vasquez and Soto Ramirez were subsequently charged in a federal complaint (18MJ4590).

13. During the search of the vehicle, the Deputy located three cellphones – two were in the center console and one was in the rear seat behind the driver's seat. Vasquez claimed a black LG smartphone (the **Target Telephone**) found in the center console belonged to him.

14. On August 22, 2018, investigators performed a field test on the two crystalline substances found within the black laptop brief case and Soto Ramirez's purse. The substances tested presumptively positive for the presence of methamphetamine. A subsequent DEA laboratory analysis confirmed the substance to be a total of 377.68 grams methamphetamine actual. Based on my training and experience, I believe 377.68 grams of methamphetamine is a distributable quantity of methamphetamine. In addition, the packaging of the methamphetamine in this case – plastic, heat-sealed baggies – is also indicative of drug sales.

15. On September 4, 2018, Magistrate Judge Jan M. Adler authorized a warrant to search the **Target Telephone** (18MJ4766). A search of the **Target Telephone** revealed information confirming that Vasquez was the user of the **Target Telephone**. For example, the **Target Telephone** contained a photo that appeared to be a "selfie" of Vasquez. In addition, the Facebook application on the **Target Telephone**, which was not password protected, opened to Facebook account "Ricky.Vasquez.5."

//

16.     On September 7, 2018, investigators visited Vasquez in state custody and read him his rights per *Miranda*. Vasquez agreed to speak with the investigators. Among other statements, Vasquez stated that he had lost his cellphone around July 4, 2018, in Mexico, and he had been logging into his Facebook account on other people's phones to communicate with others. Vasquez stated that on approximately August 18 or 19, 2018, Soto Ramirez gave him the **Target Telephone** and that the **Target Telephone** actually belonged to Soto Ramirez. Vasquez stated he used the **Target Telephone** to communicate with others via voice call, text messages, and Facebook messenger. With regard to the events surrounding his arrest, Vasquez stated that on August 20, 2018, while in Escondido, Vasquez ran into Soto Ramirez, who was driving the Nissan. He stated he went with Soto Ramirez to Harrah's Casino, where Soto Ramirez had a room. Vasquez stated he spent the night in the casino room with Soto Ramirez and the next morning (August 21, 2018), Vasquez used the Nissan to attend a court hearing at the Vista Courthouse at 9:30 a.m. with his attorney. Following the hearing, Vasquez returned to pick up Soto Ramirez at Harrah's Casino. Vasquez claimed Soto Ramirez had all her bags with her when he picked her up around 11:00 a.m. Vasquez stated Soto Ramirez called him asking him when he was going to pick her up. Vasquez stated that after he picked up Soto Ramirez, they drove from the casino to Interstate 15, onto Highway 78, and then to Emerald Drive in Vista, where they were eventually stopped by SDSO Deputies. Vasquez claimed that his friend lived near where they were arrested and he had planned to visit his friend to pick up his identification card.

17.     A review of the messages and phone calls on the **Target Telephone** revealed communications between Vasquez and a contacted saved as "Abbs" with telephone number 760-536-2793. On September 5, 2018, investigators used the **Target Telephone** to call 760-536-2793. Another telephone seized incident to the arrest on August 21, 2018, and believed to belong to Soto Ramirez, began ringing. As a result, investigators believe "Abbs" to be Soto Ramirez. The communications between Soto Ramirez and Vasquez suggest Vasquez utilized the **Target Telephone** to communicate with Soto Ramirez in furtherance of the drug conspiracy detailed above.

18.     The **Target Telephone** contains text messages and phone calls in the early hours of August 21, 2018, between Vasquez and Soto Ramirez which provide additional details of the contact between Vasquez and Soto Ramirez in the hours before their arrest. Between approximately 12:12 a.m. and 1:16 a.m. on August 21, 2018, Vasquez and Soto Ramirez placed six phone calls to each other.  At approximately 1:19 a.m., Soto Ramirez texted Vasquez, "627 n Escondido blvd in escondido ca."[1] Vasquez texted, "No esta aqui [It's not here]."  "Abbs" responded, "Y ava a llegar [It's almost there]." At approximately 1:24 a.m., Vasquez responded, "Oo Ok." Between approximately 2:21 a.m. and 2:58 a.m., Vasquez and Soto Ramirez placed three phone calls to each other.  At approximately 3:16 a.m., Vasquez texted, "10 mins." At approximately 3:19 a.m., Soto Ramirez texted, "Me estoy muriendo d la malilla [I'm dying from the withdrawals]."[2]  At approximately 3:24 a.m., Vasquez texted, "Heee... Estoy ponyendo en bolsas [I'm putting it in the bags]."  At approximately 3:37 a.m., Vasquez attempted to place a phone call to Soto Ramirez and then texted Soto Ramirez, "Estoy abajo [I'm downstairs]...Hello...Bhello...Ama." Soto Ramirez responded, "Ya voy [On my way]."

19.     Later on in the morning of August 21, 2018, Vasquez and Soto Ramirez exchanged two phone calls at 7:51 a.m. and 7:58 a.m.   Then, at 10:37 a.m. and 11:08 a.m., Vasquez called Soto Ramirez twice more.  At approximately 11:20, Vasquez missed a phone call from Soto Ramirez and, at approximately 11:24, Vasquez placed a phone call to Soto Ramirez.

20.     I believe that historical cell site data from August 18, 2018, through and including August 21, 2018, will assist investigators in determining Vasquez's physical locations and criminal activities in the days and hours before his and Soto Ramirez's arrest. Specifically, historical cell site data will assist investigators in determining whether Vasquez was indeed at a Taco Bell in Escondido in the early hours of August 21, 2018, and

---

[1]     An open source query of this address revealed it is associated with a Taco Bell in Escondido.

[2]     Based on my experience and training, I believe "las malillas" is Spanish slang for an individual feeling withdrawals from methamphetamine.

1   where he traveled that night and in the hours before his arrest in the early afternoon of
2   August 21, 2018. I respectfully request a time period from August 18, 2018, through and
3   including August 21, 2018, based on Vasquez's statements that he received the **Target**
4   **Telephone** on approximately August 18 or 19, 2018, and based on a review of the **Target**
5   **Telephone**, which contains images, phone calls, and text messages as early as August 19,
6   2018.

7      21.   In my training and experience, I have learned that Metro PCS is a company
8   that provides cellular telephone access to the general public. I also know that providers of
9   cellular telephone service have technical capabilities that allow them to collect and generate
10  information about the locations of the cellular telephones to which they provide service,
11  including cell-site data, also known as "tower/face information" or "cell tower/sector
12  records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific
13  geographic areas) that received a radio signal from the cellular telephone and, in some cases,
14  the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are
15  often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in
16  rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve
17  every call made to or from that device. Accordingly, cell-site data provides an approximate
18  location of the cellular telephone but is typically less precise than other types of location
19  information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

20     22.   Based on my training and experience, I know that Metro PCS can collect cell-
21  site data about the **Target Telephone**. I also know that wireless providers such as Metro
22  PCS typically collect and retain cell-site data pertaining to cellular phones to which they
23  provide service in their normal course of business in order to use this information for various
24  business-related purposes.

25     23.   Based on my training and experience, I know that wireless providers such as
26  Metro PCS typically collect and retain information about their subscribers in their normal
27  course of business. This information can include basic personal information about the
28  subscriber, such as name and address, and the method(s) of payment (such as credit card

8

1   account number) provided by the subscriber to pay for wireless telephone service. I also
2   know that wireless providers such as Metro PCS typically collect and retain information
3   about their subscribers' use of the wireless service, such as records about calls or other
4   communications sent or received by a particular phone and other transactional records, in
5   their normal course of business. In my training and experience, this information may
6   constitute evidence of the crimes under investigation because the information can be used
7   to identify the **Target Telephone**'s user or users and may assist in the identification of co-
8   conspirators.

**CONCLUSION**

10   24.    Based on the foregoing, I request the Court issue the proposed search warrant
11   for historical cell site information of **Target Telephone** from <u>August 18, 2018, through and</u>
12   <u>including August 21, 2018</u>, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal
13   Procedure 41.

14   25.    I further request that the Court direct Metro PCS to disclose to the government
15   any information described in Section I of Attachment B that is within its possession,
16   custody, or control. Because the warrant will be served on Metro PCS, who will then compile
17   the requested records at a time convenient to it, reasonable cause exists to permit the
18   execution of the requested warrant at any time in the day or night.

Michael P. McCready
Special Agent
Federal Bureau of Investigation

23   Subscribed and sworn to before me this _30th_ day of October 2018.

Honorable Karen S. Crawford
United States Magistrate Judge

9

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number 760-877-3970 and International Mobile Subscriber Identity 31026096921935 ("**Target Telephone**"), that are stored at premises controlled by Metro PCS ("the Provider"), headquartered at 2250 Lakeside Boulevard, Richardson, Texas 75082.

## ATTACHMENT B

## Particular Things to be Seized

### I.    Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the **Target Telephone** listed in Attachment A (incorporated herein) for the time period <u>August 18, 2018, through and including August 21, 2018</u>:

    a.  The following information about the customers or subscribers of the **Target Telephone**:
- i.   Names (including subscriber names, user names, and screen names);
- ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
- iii. Local and long distance telephone connection records;
- iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
- v.   Length of service (including start date) and types of service utilized;
- vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
- vii. Other subscriber numbers or identities (including the registration IP address); and
- viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

    b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Telephone**, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

     ii. information regarding the cell towers and sectors through which the communications were sent and received.

## II.   Information to be Seized by the United States

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of Title 21, United States Code, Sections 841 and 846, involving Ricardo Vasquez during the period of August 18, 2018, through and including August 21, 2018.